**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

**AnJuan Henry,**

*Plaintiff*, *Pro Se,*

**v.** **Case No. 3:26-cv-284**
**Judge Thomas M. Rose**

**Navy Federal Credit Union,**

*Defendant*.

---

**ENTRY AND ORDER GRANTING PLAINTIFF'S MOTION TO FILE A SUR-REPLY (DOC. 10); GRANTING MOTION TO DISMISS BY DEFENDANT NAVY FEDERAL CREDIT UNION (DOC. 18); AND TERMINATING CASE**

---

Plaintiff AnJuan Henry charges Defendant Navy Federal Credit Union with violation of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693 *et seq*., and its implementing Regulation E, 12 C.F.R. § 1005.11, by failing to conduct a "reasonable investigation" of his fraud claims; violation of Regulation E's documentation-disclosure requirement; and breach of an implied covenant of good faith and fair dealing. (Doc. 3.)

## I. Background

Plaintiff AnJuan Henry, proceeding *pro se,* alleges that on December 14, 2025, he contacted Defendant Navy Federal Credit Union to report three transactions of $2,000 each to Caesars SportsBook, an online gambling site, totaling $6,000, which he characterized as fraudulent. (Doc. 3, PageID 119.) The following day, December 15, 2025, Henry reported an

additional $2,000 Caesar's transaction to Navy Federal, bringing the total disputed amount to $8,000 across four separate transactions. (*Id.*)

On December 20, 2025, Henry filed an online police report (Doc. 3-1) and simultaneously messaged Navy Federal (Doc. 3-2). In Henry's police report, which is attached to the Complaint, Henry states that a houseguest described as a friend of Henry's girlfriend resided in Henry's home from November 20 through December 5, 2025. (Doc. 3-1, PageID 125.) Henry further states that his wallet was accessed without his authorization and that this houseguest initiated four separate $2,000 transactions between November 24 and December 1, 2025. (*Id.*)

Henry stated in the police report that all four disputed transactions were deposited into his own personal Caesars gaming account. (*Id.*) Henry characterizes this as an "account takeover" but acknowledges that the funds went to his personal account. (*Id.*)

On December 22, 2025, Navy Federal completed its investigation and sent Henry two denial communications (Docs. 3-2, PageID 126; 3-3, PageID 127.) The denial emails stated Navy Federal's reasons for the determination: The "[t]ransactions match spending patterns of valid transactions" and "[w]e determined you authorized and/or participated in the activity." (*Id.*) Each email advised Henry: "You have the right to request the documentation used in making this determination." (*Id.*) The Complaint alleges that Navy Federal told Henry, "[o]n 12/22/25 we thoroughly investigated your Debit Card Fraud Claim in the amount of $8000.00 and determined that no fraud has occurred." (Doc. 3, PageID 122.) Henry had previously made transfers as large as $755 to Caesars. (Doc. 3-6, PageID 133.)

On December 22, 2025, Henry requested the documents relied upon in the denial. (*Id.*) On December 24, 2025, Navy Federal responded (Doc. 3-5, PageID 129): "In response to your request,

the documents we rely on in denying your claim, if any, are attached for your reference. Navy Federal does not provide proprietary information reflecting its fraud detection methodologies." (*Id.*)

On January 12, 2026, Henry filed a complaint with the Consumer Financial Protection Bureau. (Doc. 3-6.) The Consumer Financial Protection Bureau closed the complaint without granting relief in approximately March 2026. (Doc. 3, PageID 121.) Henry filed this action on June 25, 2026, asserting three claims: violation of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693 *et seq*., and its implementing Regulation E, 12 C.F.R. § 1005.11, by failing to conduct a "reasonable investigation" of his fraud claims; violation of Regulation E's documentation-disclosure requirement; and breach of an implied covenant of good faith and fair dealing. (Doc. 3.)

## II. Standard

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 546 (6th Cir. 2007). The "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand the requirements of Federal Rules of Civil Procedure 8 and 12(b)(6). *Ashcroft*, 556 U.S. at 678.

"When a court is presented with a Rule 12(b)(6) motion, it may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). "[W]here materials are central to the claims asserted, a defendant may introduce these materials if the plaintiff fails to do so" without converting a motion to dismiss for failure to state a claim into a motion for summary judgment. *Dials v. Watts Bros. Moving & Storage Sys., Inc.*, No. C2-03-513, 2003 U.S. Dist. LEXIS 21413, at *7 (S.D. Ohio Nov. 24, 2003). A motion to dismiss "is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991).

## IV. Analysis

### A. First Claim (EFTA/Regulation E)

"Enacted in 1978 as an amendment to the Consumer Credit Protection Act, 15 U.S.C. § 1601 *et seq*., EFTA creates a 'framework [of] rights, liabilities, and responsibilities of participants in electronic fund transfer systems….'" *Wike v. Vertrue, Inc.*, 566 F.3d 590, 592 (6th Cir. 2009) (citing 15 U.S.C. § 1693(a)). The EFTA defines "unauthorized electronic fund transfer" as "a transfer from a consumer's account initiated by a person other than the consumer without actual authority to initiate such transfer and from which the consumer receives no benefit." 15 U.S.C. § 1693a(12). The last two words create a "no-benefit" requirement.

Here, Henry's police report states that all four $2,000 transactions went into his "personal Caesars account"—not a third-party account. The EFTA defines an unauthorized electronic fund

transfer as one "from which the consumer receives no benefit." 15 U.S.C. § 1693a(12). Because the funds flowed into Henry's own personal Caesars account, the Complaint establishes that he received a benefit from the transfers and therefore does not satisfy the statutory definition. *See Becker v. Genesis Fin. Servs.*, 06-cv-5037, 2007 WL 4190473, at *13 (E.D. Wash. Nov. 21, 2007) ("Becker received a $2,488.34 credit to her MBNA account. Accordingly, she received a 'benefit' from the transaction."); *Aikens v. Portfolio Recovery Assocs., LLC*, 716 F. App'x 37, 40 (2d Cir. 2017) (benefit conferred on Henry precluded EFTA claim); *Moore v. SouthTrust Corp*., 2:04-cv-391, 2005 WL 4663636, at *9 (E.D. Va. June 10, 2005) ("[P]laintiff cannot establish that the transactions at issue in this case were unauthorized because the plaintiff received the benefit of the transactions."). Henry's allegations of an "account takeover" do not alter the pleaded fact that the funds benefited his personal account. Where a plaintiff's attached exhibits undermine his conclusory labels, the exhibits control. *Com. Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007); *Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012) (exhibits attached to the complaint that contradict allegations control).

Henry's assertions that the transactions occurred "without my knowledge, permission, or consent" do not override Exhibit A of the Complaint's factual allegations about the transactions' destination. (*See* Doc. 3-1, PageID 125.) Because Exhibit A establishes that Henry received a benefit from the transactions, the no-benefit requirement is not satisfied. The "unauthorized" element is therefore negated on the face of the pleadings, and the first claim will be dismissed with prejudice. *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678.

Even if the transfers could be characterized as "unauthorized," Exhibits C and D of the Complaint demonstrate that Navy Federal investigated the claims and denied them on articulated,

non-pretextual grounds, which is what Regulation E contemplates. (*See* Docs. 3-3, 3-4.) Regulation E's error-resolution framework requires an institution to "'investigate promptly[,]' 'determine whether an error occurred within 10 business days of receiving a notice of error[,]' 'report the results to the consumer within three business days after completing its investigation,' and 'correct the error within one business day after determining that an error occurred.'" *Lumbus v. Huntington Bank*, 1:25-cv-00190, 2025 WL 2391456, at *8 (N.D. Ohio Aug. 18, 2025) (quoting 12 C.F.R. § 1005.11(c)(1)). Upon determining that no error occurred, the institution must provide "a written explanation of its findings" and note "the consumer's right to request the documents relied upon in the determination." 12 C.F.R. § 1005.11(d)(1); *Lumbus*, 2025 WL 2391456, at *9. A plaintiff's bare label that an investigation was "unreasonable," without facts showing a failure to meet these requirements, is a conclusory allegation that does not satisfy the plausibility standard. *See Iqbal*, 556 U.S. at 678; *Lumbus*, 2025 WL 2391456, at *9 (conclusory allegations of failure to investigate insufficient to plead a claim under §1005.11).

Applying that framework to the pleadings, the Complaint alleges that Henry reported the transactions on December 14 and 15, 2025, and that Navy Federal sent the denial communications on December 22, 2025—within the ten-business-day window. Exhibits C and D identify two concrete grounds for the denial: the transactions "match spending patterns of valid transactions" and Navy Federal "determined you authorized and/or participated in the activity." (*See* Docs. 3-3, PageID 127; 3-4, PageID 128.) Each communication further states: "You have the right to request the documentation used in making this determination." (Docs. 3-3, PageID 127; 3-4, PageID 128.) Those pleaded facts describe a prompt investigation, a written explanation, and notice of the documentation request right. *See Lumbus*, 2025 WL 2391456, at *9 ("After Huntington

'determine[d] no error' occurred, its only obligation was to provide the 'written explanation' set forth in 12 C.F.R. § 1005.11(d).").

To the extent Henry's first claim rests on the allegation that Navy Federal relied on undisclosed "proprietary fraud detection methodologies," this theory fails as a matter of law. Regulation E requires an institution, after determining that no error occurred, to provide "a written explanation of its findings" and note "the consumer's right to request the documents relied upon in the determination." 12 C.F.R. § 1005.11(d)(1); *Lumbus*, 2025 WL 2391456, at *9. The regulation requires disclosure of documents relied upon; it does not require disclosure of proprietary algorithms, fraud-detection models, or internal methodology. *See id.; see also New York v. Citibank, N.A.*, 763 F. Supp. 3d 496, 506 (S.D.N.Y. 2025) (disclosure of protocols and methods regarding an electronic funds transfer not required of institution); *Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1238–39 (11th Cir. 2019) (Regulation E focuses on providing documents relied upon and results, not internal policies). Exhibit E draws precisely that distinction. Navy Federal stated: "In response to your request, the documents we rely on in denying your claim, if any, are attached for your reference." It separately explained that "Navy Federal does not provide proprietary information reflecting its fraud detection methodologies." (Doc. 3-5.) That response—the production of documents relied upon, while declining to disclose internal methodology—is consistent with § 1005.11(d)(1).

**B. Violation of Regulation E's Documentation-Disclosure Requirement**

The second claim fails because no independent private right of action exists for a § 1005.11(d)(1) documentation-disclosure violation and because the exhibits to the Complaint demonstrate compliance. The EFTA's private right of action, 15 U.S.C. § 1693m, imposes civil

liability for a failure to comply with "any provision of this subchapter." 15 U.S.C. § 1693m. That language creates an integrated liability scheme—not a separate cause of action for each procedural step in the error-resolution process. *Wike v. Vertrue, Inc.*, 566 F.3d 590, 593–94 (6th Cir. 2009) (discussing EFTA framework and private right of action under § 1693m). Section 1005.11(d)(1) requires the institution to provide "a written explanation of its findings" and note "the consumer's right to request the documents relied upon in the determination." 12 C.F.R. § 1005.11(d)(1); *Lumbus*, 2025 WL 2391456, at *9. Henry's second claim pleads the same alleged failure to investigate and the same alleged refusal to provide documents that form the basis of the first claim. The second claim therefore attempts to split one asserted error-resolution theory into separate damages claims, contrary to § 1693m's integrated scheme. *See Tims*, 935 F.3d at 1238–39 (claims must fit within § 1693m; parsing procedural steps into separate standalone counts disfavored).

Moreover, the Complaint's own exhibits demonstrate compliance. Exhibits C and D advised Henry that he had the right to request the documentation used in the determination. (*See* Docs. 3-3, PageID 127; 3-4, PageID 128.) Exhibit E then responded to that request within two days, stating that "the documents we rely on in denying your claim, if any, are attached for your reference." (Doc. 3-5, PageID 129.) Navy Federal's separate statement that it does not provide "proprietary information reflecting its fraud detection methodologies" is consistent with § 1005.11(d)(1)'s focus on documents relied upon, not proprietary algorithms or internal methodology.

Thus, the second claim is duplicative of the first claim and the Complaint's exhibits show compliance with § 1005.11(d)(1). This count will be dismissed with prejudice.

**C. Implied Covenant Claim**

In his Response, Henry voluntarily dismissed his Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Doc. 8, PageID 237) mooting this portion of Defendant's motion.

### D. Motion to File Sur-Reply

The Court hereby **GRANTS** Henry's Motion to File a Sur-Reply. (Doc. 10.) In his sur-reply, Henry asserts that the funds transferred into his Caesar's account were then transferred on to a third party. (Doc. 10, PageID 251.) This allegation does not change the Court's analysis. The Court does not opine as to whether this might provide Henry a claim against Caesars.

## V. Conclusion

Because Henry complains of a transfer of his own funds into another of his own accounts, and because Navy Federal investigated when requested, provided its reasons when requested and provided documentation when requested, Henry's claims fail. Navy Federal's Motion to Dismiss (Doc. 6) is **GRANTED**. Henry's Complaint is **DISMISSED** with prejudice and without leave to amend. Judgment shall enter in favor of Defendant and against Plaintiff. The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

**DONE** and **ORDERED** in Dayton, Ohio, this Friday, October 16, 2026.

s/Thomas M. Rose

---

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE